## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

US POLYMERS-ACCUREZ, LLC,   )
                            )
            Plaintiff,      )   No. 4:17-CV-2371 RLW
                            )
     v.                     )
                            )
KANE INTERNATIONAL CORP., et al,  )
                            )
                            )
            Defendants.     )

## MEMORANDUM AND ORDER

This matter is before the court on Defendants Kane International Corp., Parker Ingredients, LLC, Thomas Kohlberg, and Jeremy Eisele's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 34), Defendant Maclan Industries, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 38), Defendant Matthew Grodd's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) (ECF No. 48), Plaintiff/Counter-Defendant US Polymers-Accurez, LLC's Motion to Dismiss Kane's Counterclaim (ECF No. 53), and Third-Party Defendants' Motion to Dismiss Third-Party Complaint (ECF No. 55). These matters are fully briefed and ready for disposition.

## BACKGROUND[1]

Kane International Corporation ("Kane") supplies urethane ink resins to the ink manufacturing industry. US Polymers-Accurez, LLC ("USPA") and Kane had an ongoing

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint (or counterclaim) to be true and construes all reasonable inferences most favorably to the complainant (or counterclaim). *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

business relationship, entering into at least two different contractual arrangements. The Secrecy Agreement purports to deem as "trade secrets" all information provided by Kane and USPA to each other, subject to three exceptions. After entering into the Secrecy Agreement, USPA began producing urethane ink resins that it sold only to Kane for use by Kane's customers.

By 2009, the parties' business relationship had grown to such a level that USPA was manufacturing the majority of Kane's urethane product line. On January 16, 2009, the parties entered into a Supply Agreement, under which the parties "reaffirmed" the Secrecy Agreement, and USPA agreed to continue manufacturing Kane's proprietary urethane ink resins.

In the Complaint, USPA alleges long-running and wide-ranging illegal conduct, occurring over several states and multiple years. USPA brings this action against the Defendants regarding their conspiracy (the "Kane Conspiracy"), led by ringleaders Thomas Kohlberg and his grandson Matthew Grodd, on behalf of Kane International Corporation ("Kane"), Maclan Industries ("Maclan"), and Parker Ingredients, LLC ("Parker Ingredients"), "to misappropriate USPA's trade secrets and other confidential and proprietary information, deceive end user customers in the ink resin market, tortuously interfere with USPA's contracts with its employees, and induce those employees to breach their fiduciary duties to USPA." (Complaint, ECF No. 1, ¶1). USPA alleges claims under the Defend Trade Secrets Act ("DTSA"),[2] Missouri Uniform

---

[2] The DTSA defines

> the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and

Trade Secrets Act ("MUTSA"), New York trade secrets law and asserts other common law claims. In turn, Kane brought claims against USPA and USPA's managing members Maurice S. Meyers ("Meyers") and Nick J. Agliata, Jr. ("Agliata") for breach of contract, misappropriation of trade secrets, tortious interference with business relationships, and indemnification. (ECF No. 30).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

## DISCUSSION

**I.** **Defendants Kane International Corp., Parker Ingredients, LLC, Thomas Kohlberg, and Jeremy Eisele's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 34) and Defendant Maclan Industries, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 38)[3]**

**A. Counts VII-X, XVI, XVII, and XX-XXVII**

---

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. §1839(3).

[3] Defendant Maclan Industries, Inc. joined Defendants Kane International, Parker Ingredients, Thomas Kohlberg, and Jeremy Eisele's Motion to Dismiss and accompanying memorandum in support, without providing any additional argument. Therefore, the Court does not address Maclan Industries, Inc.'s Motion to Dismiss (ECF No. 38) separately.

## 1. MUTSA Preemption

This district has outlined what is required for preemption under MUTSA:

The MUTSA "displace[s] conflicting tort, restitutionary, and other laws ... providing civil remedies for misappropriation of a trade secret." Mo.Rev.Stat. § 417.463.1. Federal courts in Missouri have interpreted this provision to preempt "civil claim[s] that are derivative of a claim of misappropriation of trade secrets." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* No. 4:00CV70 CEJ, 2002 WL 32727076, at *4 (E.D.Mo.Feb.25, 2002). Common-law claims are preempted as derivative "if they are based on facts related to the misappropriation of trade secrets claim." *Reliant Care Mgmt., Co. v. Health Sys.,* 2011 WL 4369371 at *3–4 (internal citations omitted); *see also Bancorp Servs., L.L.C.,* 2002 WL 32727076, at *4; and *Hallmark Cards v. Monitor Clipper Partners,* 757 F.Supp.2d 904, 917 (W.D.Mo.2010)). "The crucial question is whether 'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret appropriation." *Secure Energy, Inc. v. Coal Synthetics, LLC,* No. 4:08CV1719 JCH, 2010 WL 1691454, at *2 (E.D. Mo. Apr. 27, 2010) (internal citations omitted). In determining whether to find a claim preempted under MUTSA, courts must "look beyond the label of the claims to the facts being asserted in support of the claims." *Id.* at *1 (internal quotations omitted). However, "[f]or preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no application." *Hallmark Cards,* 757 F.Supp.2d at 917. Put another way, MUTSA will not preempt a claim if the information at issue does not rise to the level of a statutorily-defined trade secret.

*Level One Techs., Inc. v. Penske Truck Leasing Co., L.P.*, No. 4:14 CV 1305 RWS, 2015 WL 1286960, at *4 (E.D. Mo. Mar. 20, 2015).

Defendants claim that USPA's allegations based upon the MUTSA are barred by the statutory provisions of Missouri law. The Court holds that it is premature to dismiss USPA's claims in Counts VII-X, XVI, XVII, and XX-XXVII based upon pre-emption. The Court has not determined as a matter of law that the underlying information qualifies as a trade secret. Until that time, it would be premature to find that USPA's claims pre-empted by the MUTSA. *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010) ("For preemption to be triggered, the property that has been stolen/misappropriated must

- 4 -

be a trade secret: otherwise, the Trade Secret Act has no application."). The Court denies the Motion to Dismiss on this basis.

## 2. Counts XVI and XVII

"A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo. banc 1990); *Graham v. Hubbs Mach. & Mfg., Inc.*, 92 F. Supp. 3d 935, 943 (E.D. Mo. 2015); *see also Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) ("To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.").

Defendants assert that Counts XVI (tortious interference with Eisele Agreement) and XVII (tortious interference with Gaal Agreement)[4] are preempted because the allegations contained therein "focus on Defendants' intent to interfere with the Eisele and Gaal Agreements

---

[4] Around 2005, USPA was purchased by its current owners and is managed by Meyers and Agliata. Around the time of the purchase of USPA, Gaal (USPA's long-time Technical Director and lead chemist) executed a Confidentiality, Intellectual Property and Non-Solicitation Agreement with USPA (the "Gaal Agreement"). (Complaint, ECF No. 1, ¶29). Similarly, Eisele worked for USPA as a technical specialist and bench chemist. "At all relevant times, Eisele was restricted on his use of confidential information, physically and by policy, and was otherwise subject to a Confidentiality, Intellectual Property and Non-Solicitation Agreement ('the Eisele Agreement'), which included limitations on the use of Confidential Information." (Complaint, ¶41).

to accomplish trade secret misappropriation" and is derivative of the MUTSA claim made in Count VII. (ECF No. 47 at 8).

The Court denies the Motion to Dismiss Counts XVI and XVII because the Court holds that USPA's claim extends beyond the misappropriation of trade secrets and alleges tortious interference with the Eisele and Gaal Agreements through inducement of disclosure of confidential information and co-opting USPA employees to work for Kane to compete with USPA. (Complaint, ¶219, 232). USPA's claim for tortious interference with contracts "may be based upon 'additional facts aside from the alleged misappropriation of trade secrets.'" *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Consulting, LLC*, No. 4:08CV01683 JCH, 2009 WL 3523986, at *6 (E.D. Mo. Oct. 26, 2009) (quoting *Trinity Hospice, Inc. v. Miles,* No. 4:06CV1674, 2007 U.S. Dist. LEXIS 18805, at *8 (E.D. Mo. Mar. 16, 2007)). USPA has not limited its claim only to interfering with its business expectancies through utilization of trade secrets. At this stage of the litigation, this Court denies Defendants' motion to dismiss Counts XVI and XVII.

### 3. Count XX (Breach of Eisele's Duty of Loyalty)

In Count XX, USPA alleges that Defendant Eisele "breached his duty of loyalty to USPA, while employee by USPA, by engaging in direct competition with USPA, on behalf of Kane, as part of the Kane Conspiracy, Kohlberg Trade Secret Theft and other conduct." (Complaint, ¶254). Defendants assert that Defendant Eisele's alleged breach of loyalty in Count XX is based upon trade secret misappropriation and is derivative of the MUTSA claim made in Count VII.

At this stage of the litigation, the Court cannot hold that Count XX is derivative of the MUTSA claim made in Count VII. The Court notes that the Complaint contains several

allegations that Eisele breached his duty of loyalty by performing actions other than misappropriating trade secrets, such using a Kane business card and email and representing to end user ink resin customers that he was a Kane employee. Therefore, the Court denies the motion to dismiss Count XX based upon preemption. *See Porters Bldg. Centers, Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *6 (W.D. Mo. Oct. 2, 2017) ("Plaintiff's tort claims are more expansive. Specifically, Plaintiff's tort claims are based, in part, on Defendants' alleged misuse, misappropriation, and/or destruction of confidential information that does not rise to the level of statutorily-defined trade secret. Such claims are not preempted by the MUTSA"").

#### 4. Counts XXI-XXVI (Contributory Liability Breaches)

Counts XXI-XXIII are based upon accomplice and conspiracy liability theories of breach of loyalty by Eisele and Gaal. Counts XXIV-XXVI are contributory liability theories based upon Gaal's breach of his heightened fiduciary duties to USPA. Defendants assert that "[e]ach of Counts XXI-XXIII is also based on operative facts alleged in the trade secret misappropriation claim made in Count VII." (ECF No. 47 at 10). As a result, Defendants assert that Counts XXI-XXIII are preempted as derivative of Count VII. Likewise, Defendants aver that Counts XXIV-XXVI are preempted because the breach of fiduciary duty is derivative of Count VII. Defendants maintain that USPA's claim is based on Defendants' alleged trade secret

At the motion to dismiss stage of the litigation, the Court holds that these claims cannot be dismissed as derivative of Count VII. USPA's allegations extend beyond trade secret misappropriation and include actions such as participating in telephone calls, providing technical advice, and sending message on Kane emails and letterhead. (Complaint, ¶65(e)). Therefore, the Court denies the motion to dismiss Counts XXI-XXVI.

### 5. Count XXVII (Unjust Enrichment)

In Count XXVII, USPA alleges a claim of unjust enrichment, asserting that Defendants obtained certain "Benefits" through their alleged "numerous acts." (Complaint, ¶¶287-290). Defendants maintain the only identified act is the "usurpation of the USPA Trade Secrets." (Complaint, ¶288). As a result, Defendants assert that the unjust enrichment allegations of Count XXVII depend entirely on the misappropriation of trade secrets, and Count XXVII is preempted.

The Court holds that USPA's unjust enrichment claim is more expansive than just the usurpation of the USPA Trade Secrets. Rather, the unjust enrichment claim incorporates all factual allegations (Complaint, ¶287), including the conduct of the "Kane Conspiracy" (Complaint, ¶288). Thus, the unjust enrichment claim allegations include numerous acts beyond misappropriation of trade secrets, and the Court denies the motion to dismiss Count XXVII.

### 6. Count XXVIII (Civil Conspiracy)

In Missouri, a civil conspiracy is "an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo.1997). "To make a prima facie case of civil conspiracy, one must show: (1) two or more persons; (2) with an unlawful objective; (3) a meeting of the minds; (4) the commission of at least one act in furtherance of the conspiracy; and (5) resulting damage to the plaintiff." *Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1065 (E.D. Mo. 2005) (quoting *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 781 (Mo.1999) (en banc) (citation omitted)). A plaintiff must provide factual support of a meeting of the minds and the act in furtherance of the conspiracy. *Croskey v. Cty of St. Louis*, No. 4:14CV00867 ERW, 2014 WL 3956617 at *5 (E.D. Mo. Aug. 13, 2014); *Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 915 (E.D. Mo. 2016).

In Count XXVIII, USPA alleges the Defendants plotted together for the purpose of:

(1) injury and destruction of USPA's business; (2) misappropriation of the USPA Trade Secrets; (3) breach of the 2014 Confidentiality Agreement; (4) failure to pay $307,870.62 in outstanding net receivables; (5) breach of the Gaal Agreement and the Eisele Agreement; (6) breach of Gaal's and Eisele's duty of loyalty to USPA; and (7) breach of Gaal's fiduciary duties to USPA.

(Complaint, ¶292). Defendants argue that all but the third purpose is based upon the same operative facts as Count VII and related to trade secret misappropriation. Defendants contend that the civil conspiracy allegations of Count XXVIII depend "almost entirely on the misappropriation of trade secrets and thus derive from that cause of action." (ECF No. 47 at 13). Defendants implore the Court to find Count XXVIII is preempted and dismiss it.

The Court holds that Count XXVIII is not preempted by the MUTSA. The only enumerated act from paragraph 292 of the Complaint that is based upon trade secret is the second act: misappropriation of the USPA Trade Secrets. The remaining acts supporting USPA's civil conspiracy claim do not relate exclusively to trade secret misappropriation, and the motion to dismiss Count XXVIII is denied.

## B. Counts XI, XII, XIII and XIV

Defendants maintain that USPA cannot state a claim for trade secret misappropriation (Counts XI-XIV) under New York law because USPA's claims arise from contracts governed by Missouri law. The Complaint, however, alleges trade secret misappropriation occurred in New York, Missouri, and elsewhere. For example, Kane, Parker, and Kohlberg are located in New York and they allegedly masterminded their conspiracy in New York. The Court holds that this choice of law analysis is premature until the Court resolves the existence of any trade secrets and when, where, and how such trade secrets were misappropriated. The Court denies the motion to dismiss Counts XI, XII, XIII, and XIV as premature.

### C. All Counts against Kohlberg

Defendants assert that the claims against Kohlberg should be dismissed because he cannot be found personally liable for the conduct alleged herein. (ECF No. 47 at 20 (citing *Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997) (citing *Boyd v. Wimes,* 664 S.W.2d 596, 598[1] (Mo.App.1984) ("In Missouri, merely holding a corporate office will not subject one to personal liability for the misdeeds of the corporation.").

The Court holds that the Complaint sufficiently alleges a claim against Kohlberg as an individual. The Complaint alleges that Kohlberg is an officer of Kane and serves as its President and CEO. (Complaint, ¶¶3, 43). Kohlberg can be liable if he had actual or constructive knowledge of the tortious corporate conduct and participated in the wrong. *See Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997) (citing *Lynch v. Blanke Baer & Bowey Krimko, Inc.,* 901 S.W.2d 147, 153[15] (Mo.App.1995); *Boyd,* 664 S.W.2d at 598[1]; *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 229[20] (Mo.App.1980) ("corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong."). The Complaint alleges, "[a]s Kane's President, Kohlberg is and has been ultimately responsible for all aspects of Kane's business. Kohlberg was also the mastermind behind the Kane Conspiracy." (Complaint, ¶43). The Complaint alleges Kohlberg performed tortious conduct and, contrary to Defendants' assertions, he cannot be shielded from liability simply because he served as a corporate officer. *See State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. 2004) (quoting *Curlee v. Donaldson,* 233 S.W.2d 746, 754 (Mo. App. 1950) ("An individual is not protected from liability simply because the acts constituting the tort 'were done in the scope and course, and pertained to,

the duties of his employment.'"). Because the Complaint alleges tortious acts performed by Kohlberg individually, the Court denies the motion to dismiss as to Kohlberg.

## II.     Defendant Matthew Grodd's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) (ECF No. 48)[5]

The Complaint purports to allege a claim against Grodd for civil conspiracy. Grodd asserts that he cannot be found personally liable. Grodd asserts that USPA's claim against him fails because an employee cannot conspire with his employer. (ECF No. 48-1 at 3-5); *see Metts v. Clark Oil & Ref. Corp.*, 618 S.W.2d 698, 702 (Mo. Ct. App. 1981) ("the general rule holds that a corporation cannot conspire with its own employees").[6] Grodd states that the Complaint only alleges that he conspired for the benefit of his employer (Kane), not for any personal benefit. Likewise, Grodd contends that the Complaint does not allege a meeting of the minds between any of the other Defendants and Grodd (or Kohlberg, Kane and Parker) to commit an unlawful act to the detriment of USPA. (ECF No. 65 at 4). Grodd maintains that the conclusory allegations that all Defendants conspired with each other are insufficient. (ECF No. 65 at 4).

The Court holds that USPA sufficiently alleges a claim against Grodd for civil conspiracy. The Court holds that USPA's claims against Grodd are not barred by the intra-corporate conspiracy doctrine because USPA has alleged that Grodd had a personal stake in the conspiracy. The Complaint alleges Grodd wanted his new company, Star Glaze to succeed. *See Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1065 (E.D. Mo. 2005) (citing *Mika v. Cent. Bank of Kansas City,* 112 S.W.3d 82, 94 (Mo. Ct. App. 2003)) ("a corporation

---

[5] Grodd joins in the previously filed motions to dismiss filed by co-defendants Kane International, Parker Ingredients, Thomas Kohlberg, Jeremy Eisele, and Maclan Industries and their accompanying memoranda in support thereof. The Court incorporates by reference its holding denying these motions to dismiss and addresses only the arguments specific to Grodd.

[6] This rule is generally referred to as the "intra-corporate conspiracy doctrine." (ECF No. 58 at 3).

cannot conspire with one of its own employees unless that employee has an independent personal stake in achieving the object of the conspiracy"). The Complaint clearly states that Star Glaze benefitted from the conspiracy, particularly though misappropriating USPA's trade secrets. (Complaint, ¶¶1, 3, 12, 65). Further, USPA alleged that Grodd conspired with entities outside of the employer/employee relationship, which also bars application of the intra-corporate conspiracy doctrine. That is, Grodd conspired with Maclan and Eisele, who are not agents of Kane, in addition to Kane, Parker and Kohlberg. Finally, the Court holds that the Complaint sufficiently alleges a meeting of the minds between Defendants and Grodd. The Complaint alleges that the parties worked together to misappropriate USPA's trade secrets. (Complaint, ¶¶1, 3, 12, 65). At this stage of the litigation, the Court holds these allegations are sufficient to allege meeting of the minds for purposes of civil conspiracy. Thus, USPA alleges a claim for civil conspiracy against Grodd, and this Court denies the motion to dismiss on this basis.

## III. Plaintiff/Counter-Defendant US Polymers-Accurez, LLC's Motion to Dismiss Kane's Counterclaim (ECF No. 53)

Plaintiff/Counter-Defendant USPA filed this Motion to Dismiss Defendant/Counter-Plaintiff/Third-Party Plaintiff Kane's Counterclaim and Third-Party Complaint (ECF No. 30). In the Counterclaim, Kane alleges breach of the Secrecy Agreement and Supply Agreement (Count I), DTSA violations (Count II), misappropriation under New York common trade secret law (Count III), tortious interference with business relationships (Count IV), and for indemnification (Count V).

### A. Supply Agreement (Counts I and IV)

USPA argues that the Supply Agreement is unenforceable for two reasons: "(1) it wholly lacks any consideration, including because the only obligations it imposes consist of pre-existing

duties from the Secrecy Agreement; and (2) it is so vague and ambiguous as to be unenforceable." (ECF No. 54 at 6).

The Supply Agreement reaffirms the Secrecy Agreement. USPA argues that the Supply Agreement can be separated into three categories. First, the Supply Agreement states that "[b]oth companies operate and do business under a mutual NDA dated November 19, 1997, Kane and USPA will not disclose the supply relationship to Kane's customers… [Further,] USPA agrees not to produce any of Kane's proprietary formulas for any purpose other than for use by Kane." USPA asserts that no consideration flowed from Kane or to USPA to support the benefit in the Supply Agreement to Kane. Second, Kane and USPA agreed to "work together" to maintain "adequate capacity" and "determine some level of rapid response capability to be agreed upon by both parties," while Kane "may perform an annual quality audit." USPA maintains that these are vague and unenforceable agreements to agree. *See United States v. 518.77 Acres of Land, More or Less, Situate in Henry Cty., State of Mo.*, 545 F. Supp. 1246, 1248 (W.D. Mo. 1982) ("because the essential terms of the option are expressly left open for future negotiation, the clause creates merely an agreement to agree and is unenforceable under Missouri law"). Third, the Supply Agreement states that "Kane and USPA agree further not to compete with each other for a period of three (3) years after the termination of this agreement as agreed to in the current mutual NDA [the Secrecy Agreement] dated November 19, 1997." (ECF No. 30-2). USPA asserts that this provision merely reaffirmed the Secrecy Agreement's mutual non-disclosure provision, which was a pre-existing legal duty. Accordingly, USPA maintains that said pre-existing legal duty cannot be adequate consideration upon which a valid contract could be based. (ECF No. 54 at 8).

The Court holds that Kane has provided sufficient factual support for its contract claims under the Supply Agreement. The Court holds that the Supply Agreement included a mutual agreement to compete with each other for a period of three years after the termination of the Supply Agreement. That is, USPA would not compete with Kane in the urethane ink resin market and Kane would not compete with USPA on USPA's other lines of businesses. "It has been stated over and over again that consideration sufficient to support a simple contract may consist of a detriment to the promisee or a benefit to the promisor, and it is sufficient if either exists." *Wells v. Hartford Accident and Indem. Co.,* 459 S.W.2d 253, 260 [10] (Mo. banc 1970). "This consideration may consist of some right, interest, profit, or benefit accruing to one party, or some forbearance, loss, or responsibility given, suffered, or undertaken by the other party." *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 10 (Mo. Ct. App. 2002) (citing *Perbal v. Dazor Mfg. Corp.,* 436 S.W.2d 677, 697[55] (Mo. 1968)). The Court holds that this mutual forbearance from competing against one another after termination of the Supply Agreement constitutes adequate consideration to support the enforceability of the Supply Agreement. In addition the Court holds that, at this stage of the litigation, the terms of the Supply Agreement are sufficiently definite to survive a motion to dismiss. The Court notes that the parties followed the Supply Agreement for over seven years. *See Branson Land Co. v. Guilliams*, 926 S.W.2d 524, 526 (Mo. Ct. App. 1996) ("Even if a contract is ambiguous, it should not be held void for uncertainty if there is a possibility of giving meaning to the agreement."). Therefore, the Court denies USPA's motion to dismiss Count I and IV of the Counterclaim.

## B. Trade Secrets (Counts I, II and III)

As previously stated, Kane alleges breach of the Secrecy Agreement and Supply Agreement (Count I), DTSA violations (Count II), misappropriation under New York common

trade secret law (Count III) in the Counterclaim. USPA argues that these counts should be dismissed because Kane simply recited the definition of trade secret under New York law and DTSA without providing sufficient supporting facts. (ECF No. 54 at 9 (comparing Counterclaim, ¶60 ("Kane's trade secret information comprises formulas, patterns, or compilations of information used in Kane's business."); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) ("Under [the New York trade secret] definition, a trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'"). By simply reciting the statutory language, USPA maintains that Kane does not satisfy the pleading standard generally or with particularity, and should be dismissed.

First, the Court finds that Kane sufficiently pleaded its trade secret claims. Kane alleged that its trade secrets are formulas and manufacturing protocols and processes, as contemplated 18 U.S.C. §1839(3). (Counterclaim, ¶¶59, 60). Kane also alleges that it took reasonable steps to maintain the confidentiality of its trade secret information. (Counterclaim, ¶¶61, 62). Finally, Kane alleged that it expended significant effort and expense in acquiring the trade secret information and developing the formulas and manufacturing protocols and processes, that these formulas and manufacturing process and protocols are not easily duplicated and could not have been developed by USPA without Kane's trade secret information, and that the trade secret information has independent economic value. (Counterclaim, ¶¶64-66). The Court holds that Kane's allegations adequately state a claim for trade secrets at this stage of the litigation. *See Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ("specificity as to the precise trade secrets misappropriated is not required" to defeat a motion to dismiss).

## C. Tortious Interference with Business Relationships

In its motion to dismiss Kane's tortious interference counterclaim, USPA reiterates that the Supply Agreement is unenforceable and, therefore, no contract or asserted "non-competition clause" exists with which USPA (or its members) can interfere. (ECF No. 54 at 12). Absent any purported non-competition provision of the Supply Agreement, USPA maintains that its competitive conduct is "wholly justified and cannot support a claim for tortious interference with business relationships." (ECF NO. 54 at 13). In addition, USPA asserts that Kane's allegations of false statements are all "upon information and belief" and are insufficient under the pleading standards of *Twombly* and *Iqbal*. (ECF No. 54 at 13-14) (citing Counterclaim, ¶¶45-46) (Kane alleges "upon information and belief" USPA "informed Kane's customers that USPA was the owner of the formulas and protocols…and Kane had no right to those formulas.").

The Court holds that Kane has adequately alleged a counterclaim for tortious interference. Kane states that USPA's alleged breach of the Supply Agreement, wherein USPA expressly agreed not to disclose the supply relationship to Kane's customers, forms the basis of its tortious interference claim. (ECF No. 71 at 15-16). Kane alleges that USPA interfered with Kane's relationship with its customers by misappropriating Kane's trade secrets and then directly contacting Kane's customers in violations of the non-compete and non-disclosure provisions of the Supply Agreement. These allegations are sufficient to state a claim at the motion to dismiss stage. Further, the Court holds that allegations based upon "information and belief" are sufficient because Kane either supplied adequate factual support for the allegations and/or because the specific information is within the particular control of USPA. *See Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009) ("Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded."); *Energizer*

*Brands, LLC v. Procter & Gamble Co.*, No. 4:16-CV-223 (CEJ), 2016 WL 2894708, at \*3 (E.D. Mo. May 18, 2016) (internal citation omitted)("The Twombly plausibility standard...does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant."). The Court denies USPA's motion to dismiss Kane's counterclaim for tortious interference.

### D. Indemnification

In Count V, Kane seeks damages and declaratory relief against USPA based on an alleged duty to indemnify. Kane alleges that, under the direction of Meyers and Agliata, USPA manufactured KFILM 7890 ink resin, to be sold under Kane's name. Thereafter, the KFILM 7890 ink resin was found to contain dangerous levels of methanol, which caused Kane to incur liability to its customer. (Counterclaim, ¶¶100-110). Kane alleges that USPA, Meyers, and Agliata knew or should have known of the methanol content of the resin and failed to disclose it. (*Id.*). Kane brings a claim against USPA for indemnification on this basis.

USPA notes that Kane does not allege any contractual basis or oral agreement for USPA to indemnify Kane. (ECF No. 54 at 14). Because there is no contractual basis for indemnification, USPA asserts Kane fails to state a claim for indemnification as a matter of law.

The Court holds that Kane alleges a common law claim for indemnification at this stage of litigation. Kane alleges that it is being held responsible for the reckless and dangerous conduct of USPA, which supports indemnification under common law. "When a party, without any fault of its own, is exposed to liability and compelled to pay damages because of the negligence of another, that party has an action against the active tortfeasor on the theory of indemnity." *Simply Thick, LLC v. Thermo Pac, LLC*, No. 4:13-CV-1036 CAS, 2015 WL 5734920, at \*3 (E.D. Mo. Sept. 29, 2015) (citing *SSM Health Care St. Louis v. Radiologic*

*Imaging Consultants, LLP*, 128 S.W.3d 534, 539 (Mo. Ct. App. 2003)). The Court denies the motion to dismiss Count V of Kane's Counterclaim on this basis.

## IV. Third-Party Defendants' Motion to Dismiss Third-Party Complaint (ECF No. 55)

The third-party defendants, Maurice S. Meyers and Nick J. Agliata, Jr. (collectively, "Third-Party Defendants") move to dismiss the claims against them for the same reasons that USPA moved to dismiss Kane's Counterclaim (except for Count I which is not addressed to the Third-Parties), but also because (1) the Third-Parties were improperly joined under Fed. R. Civ. P. 14 and (2) the Third-Parties cannot be held personally liable for their actions on behalf of USPA under the facts pleaded by Kane.

### A. Improper Joinder under Fed. R. Civ. P. 14

Third-Party Defendants assert that they were improperly joined under Fed. R. Civ. P. 14. Rule 14 provides "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." That is, "Rule 14 'permits a defending party (usually a defendant) to bring a new party into a pending case, but only if that absentee is or may be liable to the defending party for all or part of the plaintiff's claim against it.'" *Advanced Lipo Dissolve Ctr., LLC v. Karkkainen*, No. 406-CV-199 CAS, 2007 WL 844822, at *3 (E.D. Mo. Mar. 19, 2007) (citing 3 James Wm. Moore, et al., *Moore's Federal Practice* § 14.03[1] (3d ed.2006)). "The liability of the third-party defendant to the party that impleaded it must be for losses sustained by that party *as a result of plaintiff's claim;* unrelated liability to the defendant is not a basis for impleader." *Id.,* § 14.04[2]. Rule 14 impleader cannot be used to assert third-party claims that arise out of the "same general set of facts as the main claim," *i.e.,* are transactionally related. *United States v. Olavarrieta*, 812 F.2d

640, 643 (11th Cir. 1987). Instead, Rule 14 can only be used for derivative liability or indemnity situations. *United States v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir.1987). *Accord Gaines v. Sunray Oil Co.,* 539 F.2d 1136, 1139 n. 7 (8th Cir.1976) ("Sunray's claim could not be maintained as a third-party claim since it is not one for indemnity."); *Stewart v. American Internat'l Oil & Gas Co.,* 845 F.2d 196, 199 (9th Cir.1988) ("Thus, a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto."); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003). Third-Party Defendants assert that Kane's purported claims against them do not depend on or derive from USPA's claims in the Complaint. For example, Third-Party Defendants note that the USPA does not assert in its Complaint any liability due to tainted products, as alleged by Kane in Count V of the Third-Party Complaint. (ECF No. 56 at 3).

In response, Kane claims that its Counterclaim and Third-Party Complaint demonstrate the Kane has "multiple claims against Plaintiff USPA, each of which is the result of the wrongful acts of Meyers and Agliata personally." (ECF No. 66 at 1).[7] Kane maintains that it filed a counterclaim against USPA under Rule 13(a), which requires that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" (ECF No. 66 at 2). Kane further states that it joins Meyers and Agliata as "third-party defendants" pursuant to Rule 20 which provides that any persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence,

---

[7] Kane maintains it has a compulsory counterclaim against USPA under Rule 13(a). (ECF No. 66 at 1-2).

or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The Court holds that Kane has improperly joined Meyers and Agliata as third-party defendants. Kane has joined Meyers and Agliata under the counterclaim rules (Rules 13 and 20), not under the rules governing third party practice. Likewise, Kane does not allege a third-party claim against Meyers and Agliata that depends on or derives from USPA's claims in its Complaint. *See* Fed. R. Civ. P. 14. Therefore, the Court grants Meyers and Agliata's Motion to Dismiss the Third-Party Complaint, and grants Kane until September 26, 2018 to file an amended pleading against Meyers and Agliata. *Advanced Lipo Dissolve Ctr., LLC*, 2007 WL 844822, at *3 (dismissing third-party complaint that purported to be brought under Rule 14).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Kane International Corp., Parker Ingredients, LLC, Thomas Kohlberg, and Jeremy Eisele's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 34), Defendant Maclan Industries, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 38), Defendant Matthew Grodd's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) (ECF No. 48), Plaintiff/Counter-Defendant US Polymers-Accurez, LLC's Motion to Dismiss Kane's Counterclaim (ECF No. 53) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Third-Party Defendants' Motion to Dismiss Third-Party Complaint (ECF No. 55) is **GRANTED**. Kane's Third-Party Complaint against Meyers and Agliata is **DISMISSED**. Kane is **GRANTED** until September 26, 2018 to file an amended pleading against Meyers and Agliata.

**IT IS FINALLY ORDERED** that Defendants Kane International Corporation, Parker Ingredients, LLC, Thomas Kohlbert, & Jeremy Eisele's Unopposed Request for a Hearing on Pending Motions to Dismiss (ECF No. 75) is **DENIED** as moot.

Dated this /7 th day of September, 2018.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**